Bobbie Gene STUCKEY, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 39717.

Missouri Court of Appeals,
Western District.

July 19, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 1988.

Thomas J. Cox, Marilyn S. Gussman, E. Ann Wright, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Bobbie Gene Stuckey appeals from the denial after an evidentiary hearing of his Rule 27.26 motion for post-conviction relief. We affirm.

Stuckey was found guilty by a jury in the Circuit Court of Grundy County of capital murder, § 565.001, RSMo (1978) and was sentenced by the court to life imprisonment without possibility of parole for 50 years. The state's evidence showed that Stuckey and his wife, Mitzie Stuckey, who was also convicted of murder, jointly participated in the murder of Larry Wilson and the subsequent theft of a trailerload of hogs. Following transfer from this Court, the conviction and sentence were upheld on appeal. *State v. Stuckey*, 680 S.W.2d 931 (Mo. banc 1984).

On August 27, 1985, Stuckey filed a *pro se* motion under Rule 27.26. Following the appointment of counsel, an amended motion was filed on January 27, 1986. Thereafter, Stuckey filed a Partial Dismissal in which he voluntarily dismissed four of the grounds set forth in his motion. In the grounds remaining to be decided, Stuckey alleged: (1) ineffective assistance of counsel; (2) denial of due process due to conflicts in the prosecution's case against him and the prosecution's case against his wife for the same murder; (3) denial of due process due to the admission of inadmissible testimony; (4) denial of due process due to improper prosecutorial argument; (5) denial of due process due to the admission of improper rebuttal testimony; and (6) denial of due process due to suggestive and improper lineup procedures.

On or about February 10, 1986, the state filed a motion to produce all documents which were compiled by one of Stuckey's trial attorneys in connection with his representation of Stuckey at trial. In his response to the motion, Stuckey objected to the state's request on the grounds that it was overbroad, unduly burdensome and sought documents which were protected by the work product doctrine and attorney-client privilege. The court subsequently ordered production of the requested documents. Thereafter, these documents were made available to the prosecuting attorney.

An evidentiary hearing was held pursuant to Stuckey's 27.26 motion on July 17, 1986. Stuckey was the only witness to testify in his behalf. Over one year later, on July 27, 1987, the trial court made findings of fact and conclusions of law denying the motion. This appeal followed. Our review is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 27.26(j); *Leigh v. State*, 673 S.W.2d 788, 790 (Mo.App.1984).

In Points I, III, IV and V of his brief, Stuckey sets forth various allegations of trial error. In an effort to bring these matters within the scope of Rule 27.26, Stuckey asserts that by these occurrences he was deprived of due process of law under the fifth and fourteenth amendments of the United States Constitution and Article I, Section 10 of the Missouri Constitution.

Points I and IV involve challenges to certain statements made by the prosecutor during his closing argument. Stuckey's principal contention under Point I is that the prosecutor was foreclosed by the doctrine of collateral estoppel from arguing that Stuckey had shot Larry Wilson when he later argued at the subsequent trial of Mitzie Stuckey that she had done the shooting. He also complains, under Point IV, that the prosecutor argued facts not in evidence and made statements which were inflammatory and unfairly prejudiced the minds of the jurors against him.

Under subsection A of his Point III on appeal, Stuckey contends that the trial testimony of Marion Wilson, Dianna Dishman, and Kwei Lee Su was improperly admitted

into evidence because "such had not previously been provided to appellant by the prosecutor." Under subsection B of the same point, he alleges that the testimony of Steven Broughton concerning his identification of Mitzie Stuckey was improperly admitted because it was the product of "one photo lineup."

Finally, under subsections A and B of Point V, Stuckey complains that the testimony of Sheriff Dean Mason concerning "the truth and veracity of appellant" should not have been admitted because the basis of his knowledge was never shown, and that the state should not have been permitted to elicit the testimony of James Johnston regarding statements made by Stuckey before his arrest because these statements constituted improper rebuttal evidence.

■ Rule 27.26 specifically provides that "[m]ere trial errors are to be corrected on direct appeal" and "[a] proceeding under this Rule ordinarily cannot be used ... as a substitute for a second appeal." Rule 27.-26(b)(3). Thus, claims relating to the propriety of a prosecutor's closing argument, *see Forbes v. State*, 627 S.W.2d 58, 60 (Mo.App.1981); *Tyler v. State*, 574 S.W.2d 434, 435 (Mo.App.1978), or prosecutorial misconduct, *see Bufalo v. State*, 614 S.W. 2d 29, 32 (Mo.App.1981), are considered "trial errors" beyond the scope of Rule 27.26 proceeding. Claims concerning the state's failure to comply with the rules of discovery are likewise outside the purview of a Rule 27.26 action. *Baker v. State*, 584 S.W.2d 65, 68 (Mo. banc 1979). Nor may the alleged improper admission of evidence be litigated in a Rule 27.26 motion. *O'Neal v. State*, 486 S.W.2d 206, 207 (Mo.1972); *Jones v. State*, 591 S.W.2d 153, 155 (Mo. App.1979).

■ Although we are mindful that Rule 27.26 provides that "trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal," Rule 27.26(b)(3), trial errors cannot be brought within the scope of Rule 27.26 merely by alleging as a conclusion that they affected constitutional rights. *Hanson v. State*, 684 S.W.2d 337, 339 (Mo.

App.1984). Moreover, even trial errors affecting constitutional rights cannot be litigated in a Rule 27.26 motion "except in rare and exceptional circumstances." *McCrary v. State*, 529 S.W.2d 467, 472 (Mo.App.1975). *See also Brown v. State*, 729 S.W.2d 54, 55 (Mo.App.1987).

There is nothing in the record to indicate, nor does Stuckey allege, special circumstances which would have prevented him from raising these issues on direct appeal. *See Arbeiter v. State*, 738 S.W.2d 515, 516 (Mo.App.1987). Therefore, Points I, III, IV and V are denied.

Under Point II of his brief, Stuckey contends that he was denied effective assistance of counsel in that his attorneys: (1) failed to object to improper remarks made by the prosecution during closing argument; (2) failed to make reasonable inquiry before trial into the testimony of Dr. Mote, a pathologist called as an expert witness by the state, which resulted in their being unprepared and unable to rebut his testimony at trial; (3) failed to investigate or take statements from other witnesses called by the state; and (4) failed to discuss the case with him or take his statement of what occurred until the second night of trial.

■ Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984). In order to overcome this presumption of competency and prevail on a claim of ineffective assistance of counsel, the movant bears the burden of showing that counsel's performance was deficient and that his or her "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This showing must be made by a preponderance of the evidence. *Jackson v. State*, 672 S.W.2d 367, 368 (Mo.App.1984).

An attorney's performance has been deficient when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland v. Washington, supra,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The "prejudice" prong of this two-part test is satisfied when it is shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed. at 698. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Applying the foregoing principles to the present case, we find that Stuckey has failed to sustain his burden with respect to the allegations of ineffectiveness raised in his motion.

Stuckey complains that he was denied effective assistance of counsel because his attorneys failed to make timely objections to the following comments made by the prosecutor during closing argument:

(1) "It just upsets me no end, to hear somebody get up here under oath and tell you folks a lie."

(2) "He got on the stand and told you a bald-faced lie."

(3) "He didn't want to waste lead, I guess."

(4) The jury should return a guilty verdict "so that we will not have any other wives and children without fathers, and so that our community and the streets can be safe for us all."

(5) "You know what she'll say. 'I didn't do it, he did.'"

No objections were made to the first three comments. Although his attorney objected to the latter two comments, the objections were not made contemporaneously and were overruled. In his direct appeal, Stuckey unsuccessfully alleged that the trial court erred in overruling these objections. *See State v. Stuckey, supra,* 680 S.W.2d at 937–38.

■ Standing alone, the failure to object to objectionable evidence or argument does not establish ineffective assistance of counsel. *Tygart v. State,* 741 S.W.2d 830, 832 (Mo.App.1987). The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial. *Id.* at 832–33.

■ In the present case, his attorneys' failure to make timely objections to the prosecutor's arguments does not support Stuckey's claim of ineffective assistance of counsel. None of the comments can be construed to have substantially deprived Stuckey of his right to a fair trial, especially in light of the fact that the jury was told in MAI–CR2d 2.68 that such arguments are not evidence.

■ The prosecutor's assertions that Stuckey had lied during his trial testimony were permissible comments on Stuckey's credibility as a witness. It is not improper for a prosecutor to disparage the credibility of the defendant or his witnesses. *State v. Nickens,* 701 S.W.2d 478, 483 (Mo.App. 1985); *State v. Ferguson,* 651 S.W.2d 521, 524 (Mo.App.1983). A prosecutor may argue that a witness is lying if such an inference may be fairly drawn from the evidence. *Id.* Here, the prosecutor's statements that Stuckey had lied were fairly drawn from inconsistencies in the evidence presented. For example, at one point after his arrest, Stuckey told the sheriff holding him in custody, "I killed him [Wilson] but I didn't mean to." Yet, at trial, Stuckey testified that his wife shot the victim. As the record demonstrates, the prosecutor's argument that Stuckey had given false testimony was a reasonable inference to be drawn from the evidence.

The prosecutor's comment that Stuckey "didn't want to waste lead" was made immediately after his statement that, in killing Wilson, Stuckey "did a very clean job, his execution was very efficient, you know, just one shot it's over." Although sarcastic, this comment was also an inference that could reasonably be drawn from the evidence indicating that the victim's death was caused by a single gunshot wound to the head.

With regard to the prosecutor's statement that Mitzie Stuckey would claim that she did not commit the murder, but her husband had, the Missouri Supreme Court considered the propriety of this remark on

direct appeal and concluded that it could not "reasonably be read as an assertion that the prosecutor had special knowledge as to how she might testify." *State v. Stuckey, supra,* 680 S.W.2d at 937. The Court also considered the prosecutor's remark about "wives and children without fathers" on direct appeal and stated that "[t]he comment about Wilson's wife and children, although better left unsaid, was not highly inflammatory in the context of the case." *Id.* Accordingly, the Court found that these remarks were not likely to have had "a decisive effect on the jury's determination." *Id.* It follows, then, that Stuckey's claim that he was prejudiced by his attorney's failure to make a timely objection to these remarks cannot be sustained, as he cannot show that, but for his attorney's error, the result of the proceeding would have been different. *See Strickland v. Washington, supra,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

Stuckey next complains that his attorney's failure to make reasonable inquiry before trial into the testimony of Dr. Mote, a pathologist and witness for the state, as well as the testimony of Dianna Dishman, Dr. Kwei Lee Su, and Marion Wilson, other witnesses endorsed by the state, rendered him ineffective as counsel because he was unprepared and unable to rebut these witnesses' testimony at trial. The argument is without merit.

■ A movant for post-conviction relief who asserts ineffective assistance of counsel based on inadequate investigation must show that fuller investigation would have uncovered evidence which would have improved his trial position. *Thomas v. State,* 665 S.W.2d 621, 624 (Mo.App.1983); *Beattie v. State,* 603 S.W.2d 42, 44 (Mo. App.1980). At his 27.26 hearing, Stuckey presented no evidence on this issue. Therefore, there is nothing in the record to indicate that additional investigation into Dr. Mote's probable testimony or the probable testimony of witnesses Dishman, Su and Wilson would have produced evidence that would have impeached these witnesses' testimony or aided Stuckey's defense in any way.

■ Stuckey further complains that his attorneys were ineffective for failing to adequately discuss the case with him and for "failing to take a full statement of the events that occurred from [him] until the second night of the trial." He contends that, a result of this lack of communication, his attorneys were unable to conduct a proper investigation into evidence that Stuckey could provide to aid in his defense.

The difficulty with this claim is that it is simply not supported by the record produced at trial or at Stuckey's Rule 27.26 hearing.

On the third day of trial, prior to Stuckey's taking the stand to testify in his own behalf, a record was made outside the hearing of the jury in which Stuckey acknowledged that he had repeatedly discussed the case and his decision to testify with his attorneys, David Strauss and Joseph Sandifer:

Q: We have discussed this quite a bit, not only just today but we have discussed it all throughout this trial and even ever since I have been appointed to represent you, isn't that correct?

A: That's right.

    \*    \*    \*    \*    \*    \*

Q: O.K. Bobbie, in regards to that last part first [referring to the trial judge's inquiry into whether Stuckey was asking his attorneys to do something they hadn't discussed or failed to do], has either Joe Sandifer or myself refused to do anything that you have asked us to do?

A: No, not that I know of.

Q: Is there anything that we have done that you know of, either Joe or myself, that we have done that you wish we hadn't have done?

A: Not that I know of.

    \*    \*    \*    \*    \*    \*

Q: O.K. During the time I have represented you, have you seen me enough, of course recognizing that when I was down in Columbia you were up in Shelbyville it was quite a

distance, but not only in person but I have talked to you also on the telephone, have I not?

A: Yes, you have.

Q: And I have seen you, when they brought you up here the other day, we have been in contact some times, oh, at night after the trial, sometimes during recesses we have had contact also, haven't we?

A: That's right.

Furthermore, Stuckey admitted at the Rule 27.26 hearing that he had spoken with one of his attorneys, David Strauss, at least four times prior to trial, and that each of these visits lasted "anywhere from 30 minutes to an hour." Stuckey also admitted to having spoken several times with his co-counsel, Joseph Sandifer, who had been appointed to represent Stuckey on a robbery charge involving the same victim, and who was present and assisting Mr. Strauss at all times throughout the murder trial. Most importantly, when asked whether he "had an opportunity to ask him [David Strauss] any questions or give him any information [he] wanted to," Stuckey answered "Yes."

As the records indicate, Stuckey's claims of ineffective assistance of counsel based on his attorneys' purported failure to adequately discuss the case with him are refuted by his own testimony and afford no basis for relief. *See Green v. State*, 708 S.W.2d 295, 297 (Mo.App.1986).

With regard to Stuckey's complaint that his attorneys were ineffective for failing to take his full statement until the second day of trial, Mr. Sandifer testified that such a practice is not uncommon and is often done as a matter of trial strategy. Mr. Sandifer explained that a lawyer who obtains the defendant's version at the outset of the case frequently finds that his client wishes to change his story as the evidence develops, thereby hampering the defense, since an attorney is absolutely forbidden from presenting perjured evidence.

■ Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief. *Williamson v. State*, 628 S.W.2d 895, 898 (Mo.App.1981). Counsel is vested with broad latitude in conducting the defense and is entitled to use his best judgment in matters of trial strategy. *Jones v. State*, 598 S.W.2d 595, 597 (Mo.App.1980). Accordingly, Stuckey's point is denied.

■ In his final point, Stuckey contends that the Rule 27.26 court erred in sustaining the state's motion to produce any and all documents compiled by one of Stuckey's trial attorneys in connection with his representation of Stuckey at trial because the motion sought documents that were protected by the attorney-client privilege.

As Stuckey correctly points out in his brief, § 510.030, RSMo (1986) specifically limits the discovery of documents to those which are not privileged. In his post-conviction motion, however Stuckey attacked the adequacy of his representation by counsel, citing various derelictions such as his attorneys' failure to sufficiently investigate the case, obtain discovery, object to the admission of certain evidence, or discuss the case with Stuckey before trial. By raising the issue of ineffective assistance of counsel, Stuckey waived any attorney-client privilege he may have had with respect to any information contained in his trial attorneys' files relating to their representation of him at trial. *Lansdown v. State*, 472 S.W.2d 342, 346 (Mo.1971); *Johnson v. Schmidt*, 719 S.W.2d 825, 827–28 (Mo.App.1986); *Jackson v. State*, 540 S.W.2d 607, 610 (Mo.App.1976). Therefore, the documents were properly discoverable.

The judgment is affirmed.

All concur.