**STATE of Missouri, Respondent,**

v.

**Dennis HYMAN, Appellant.**

**No. WD 56502.**

Missouri Court of Appeals,
Western District.

Jan. 18, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 29, 2000.

Application for Transfer Denied
March 21, 2000.

---

Craig A. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before: Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge RIEDERER.[1]

HAROLD L. LOWENSTEIN, Presiding Judge.

After a jury trial in the Circuit Court of Jackson County, the appellant, Dennis Hyman, was convicted of one count of forcible rape (thirty years), one count of forcible sodomy (fifteen years), one count of kidnapping (fifteen years), one count of class B felony sexual abuse (fifteen years) and four counts of armed criminal action (five years each). Appellant was sentenced as a prior and persistent offender and a persistent sexual offender to a total of eighty years imprisonment. (Some sentences were to run concurrent to others.) On appeal, Appellant contends (1) the trial court erred in overruling his motions for judgments of acquittal as to the counts of armed criminal action because there was insufficient evidence of the use of a "dan-

---

1. After submission of this case, Judge Rieder- er retired from the court.

gerous instrument," and (2) the court erred in entering judgment and sentence on the count of class B sexual abuse because the jury instruction did not require and the jury never found Appellant guilty of one of the four alternative grounds which must be present to constitute class B sexual abuse, and therefore, Appellant could only be found guilty of class C sexual abuse.

## I. FACTS

On June 9, 1997, at about 6:30 a.m., a thirteen-year-old girl (Victim) left her house at 2947 Poplar in Kansas City and began walking toward her bus stop. As she walked, she saw Appellant but continued walking. When she reached a park at 30th and Elmwood, Appellant came up behind her, held a knife to her neck, and told her that if she screamed or told anyone he would kill her. At that time, Victim could see "a little" of the knife, namely "the tip." Victim later testified that this was the only time she saw Appellant's knife. Appellant then grabbed her by the arm and walked her through the park.

After leading her to another area of the park, Appellant raped and sodomized Victim. Victim testified that she did not want to do any of these acts with Appellant, but that she submitted because she was "scared that he would kill [her]."

Appellant eventually allowed Victim to leave. She fled home where she told her brother and sister that she had been raped. The police were called and later observed Appellant about four or five blocks from the crime scene. Appellant matched the description given the officers by Victim and was arrested. Victim identified Appellant as her assailant.

Appellant was found guilty by a jury of one count of forcible rape, one count of kidnapping, one count of forcible sodomy, one count of class B felony sexual abuse,

and four counts of armed criminal action. Appellant was sentenced as a prior and persistent offender and a persistent sexual offender to a total of eighty years imprisonment.

## II. STANDARD OF REVIEW

 On appeal from a jury-tried criminal case, "[i]t is not the role of a reviewing court to weigh the evidence, but rather, it is the function of the jury to determine beyond a reasonable doubt whether defendant was guilty of the offense charged." *State v. Brown*, 660 S.W.2d 694, 698 (Mo. banc 1983) (citations omitted). "In assessing the sufficiency of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. The question is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdict." *Id.* at 698–99.

## III. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Appellant's first point contests the sufficiency of the evidence relating to the four armed criminal action convictions. He contends there was insufficient evidence of a "dangerous instrument" involved in the crimes. He additionally contends that as to the sex offenses, "even if Appellant had a dangerous instrument initially, there was insufficient evidence that it was used to aid or assist those offenses," because Victim only saw Appellant's knife early on in the abduction and never saw it again.

§ 571.015.1, RSMo 1994.[2] which defines the crime of armed criminal action, in pertinent part provides:

[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a

---

**2.** All further statutory references are to the Revised Statutes of Missouri, 1994, unless

otherwise indicated.

dangerous instrument...is also guilty of the crime of armed criminal action...

§ 556.061(9) defines a "dangerous instrument" as, "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."

■■■■ Appellant first contends there was insufficient evidence that he used a "dangerous instrument." Victim testified at trial that Appellant held a knife to her neck and told her that if she screamed he would kill her. Additionally, Victim testified that she could see the tip of Appellant's knife. "To determine whether an *object is a dangerous instrument we must* look to its use under the circumstances...A knife used in a threatening manner is a dangerous instrument." *State v. Jackson,* 865 S.W.2d 678, 680 (Mo.App.1993) (citations omitted). Holding a knife to someone's throat in order to get them to remain silent is using that knife "in a threatening manner." Therefore, Appellant's use of the knife under these circumstances qualifies as use of a "dangerous instrument." There was sufficient evidence from which a jury could find that Appellant used a "dangerous instrument" in his encounter with Victim.

■■■ Appellant next argues even if there was sufficient evidence that a "dangerous instrument" was used at the time of the initial kidnapping, there was insufficient evidence that he committed the forcible rape, forcible sodomy and sexual abuse "by, with, or through the use, assistance, or aid" of a dangerous instrument. Appellant's argument rests on Victim's testimony that she never saw the knife again after Appellant initially held it to her throat. Appellant contends that because Victim did not see the knife during any of the sex acts, it cannot be said that he committed those acts through the use, assistance, or aid of a dangerous instrument.

The State relies on *State v. Boyd,* 844 S.W.2d 524 (Mo.App.1992), to refute Appellant's assertion. In that case, the defendant forced the victim into his car while pointing a screwdriver at her neck. After defendant drove her to a new location, the victim grabbed the screwdriver from his hand. During this exchange, the screwdriver broke, with defendant retaining only the handle portion. Defendant threw the handle under the car seat and proceeded to rape and sodomize the victim. Defendant was convicted of kidnapping, forcible rape, sodomy and three counts of armed criminal action. On appeal, defendant claimed that because the screwdriver was discarded prior to any sexual conduct, he could not be guilty of armed criminal action corresponding to the rape and sodomy charges. The Court of Appeals disagreed holding that, "[u]se of the screwdriver unquestionably aided appellant in the commission of all three felonies, including the two sexual offenses." *State v. Boyd,* 844 S.W.2d at 526.

Presumptively, the *Boyd* court's reasoning in so holding was that defendant's threatening of victim with the screwdriver "aided" defendant in committing the felonies by placing victim in fear and forcing victim to the location wherein those crimes were committed. The same reasoning applies in the case at bar. Appellant threatened Victim with a knife upon their initial meeting. He then forced her to a new location wherein the sexual acts were performed. Additionally, in this case, Victim certainly believed that Appellant still possessed the knife throughout the entire ordeal. Victim testified she submitted to Appellant's sexual acts because she was afraid he would kill her. From this, and the reasoning in the *Boyd* case, there was sufficient evidence from which the jury could find Appellant committed the rape, sodomy and sexual abuse with the aid of a dangerous instrument. This point is denied.

## B. IMPROPER JURY INSTRUCTION

■■■ Appellant's second claim of error is that the trial court erred in entering judgment and sentence as to the class B felony

of sexual abuse because the verdict director did not contain and the jury did not find any of four alternative elements listed in § 566.100.2, one of which must be established for a conviction of class B sexual abuse. Since none of those elements were instructed upon or found, Appellant claims he could only be found guilty of the class C felony of sexual abuse.

§ 566.100.1 provides that a person commits the crime of sexual abuse "if he subjects another person to sexual contact by the use of forcible compulsion." § 566.100.2 reads:

> Sexual abuse is a class C felony unless in the course thereof the actor inflicts serious physical injury or displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to sexual contact with more than one person or the victim is less than fourteen years of age, in which case the crime is a class B felony.

The instruction given to the jury on the sexual abuse count read as follows:

> As to Count VII, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about July 9, 1997, in the County of Jackson, State of Missouri, the defendant caused Jasmine R. Pierro to touch the genitals of defendant, and
>
> Second, that he did so for the purpose of arousing or gratifying his own sexual desire, and
>
> Third, that he did so by the use of forcible compulsion, then you will find the defendant guilty under Count VII of sexual abuse.

The above follows the language of the first three paragraphs of Missouri Approved Instruction 320.27. *See MAI–CR3d 320.27.* However, there was no addition from the last paragraph of approved instruction 320.27 which reads:

> (and) (Fifth, that [*Insert one of the following. Omit brackets and number.*]

■, in the course of this conduct, the defendant inflicted serious physical injury on [*name of person*],

■, in the course of this conduct, the defendant displayed a (deadly weapon) (or) (dangerous instrument) in a threatening manner,

■, in the course of this conduct, the defendant subjected [*name of victim*] to sexual contact with more than one person,

■ [*name of victim*] was then less than fourteen years old,)

It is clear from the language of the sexual abuse statute and from the instruction's "Notes on Use," that it is the inclusion of one of the four alternatives listed above that qualifies an instruction as submitting a class B, as opposed to a class C, sexual abuse count. *See MAI–CR3d 320.27, Notes on Use No. 6.* Failure to submit one of those alternatives classifies the instruction as one for class C felony sexual abuse.

Appellant raises the issue of the improper jury instruction for the first time on appeal. The point was not raised at trial or in Appellant's motion for a new trial. Therefore, this court may only review for "a strong, clear demonstration of manifest injustice or miscarriage of justice" which "so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Hinkle,* 987 S.W.2d 11, 12–13 (Mo.App.1999) quoting *State v. Hernandez,* 880 S.W.2d 336, 338 (Mo.App.1994). Although plain error review under Rule 30.20 is discretionary and used sparingly, the court will under these circumstances review this point. *State v. Boyd,* 954 S.W.2d 602, 606 (Mo.App.1997).

This court in *State v. Chavez,* 735 S.W.2d 127 (Mo.App.1987), examined unpreserved instructional error similar to the one at issue. Chavez was charged with and convicted of class B perjury. However, the verdict director implemented for the perjury charge contained only the elements of class C perjury and failed to

include any of the additional elements necessary to convict for class B perjury. On these facts, the court found Chavez had been convicted of only class C perjury and remanded for resentencing consistent therewith. This reasoning is here applicable. It was a manifest injustice to convict and sentence Appellant on class B sexual abuse after only instructing the jury as to class C sexual abuse.

The state attempts to argue that Appellant was not prejudiced by the court's failure to instruct on one of the four elements necessary for class B sexual abuse, because the missing language could be found in other instructions submitted to the jury. On the armed criminal action count tied to the sexual abuse charge, the jury was instructed that they must find, and the jury did find, that Appellant committed the sexual abuse "by, with, or through the use, assistance, or aid of a dangerous instrument." Respondent contends this finding "cures the lack of that" finding with regard to the sexual abuse count even though housed in a separate jury instruction. The state apparently asserts that finding Appellant committed the sexual abuse with the "aid of" a dangerous instrument and so was guilty of armed criminal action, satisfies the "display of a dangerous instrument" element listed in § 566.100.2, the sexual abuse statute. This proposition is without merit. Respondent relies on two inapplicable cases in making this assertion.

In *State v. Dooley*, 851 S.W.2d 683, 687 (Mo.App.1993), the court held it was not improper to exclude from one jury instruction the definition of "serious physical injury," since that phrase was defined in two other instructions. A finding that it was not error to exclude a definition from a jury instruction can hardly be equated to the present situation where Appellant was convicted of a crime, upon one essential element of which, the jury was not instructed. Additionally, *State v. Deck*, 994 S.W.2d 527 (Mo. banc 1999), is inapplicable. There the Supreme Court held it was not plain error to omit from some jury instructions, but not from others, the fact that jurors could consider mitigating factors in a capital case. Again, that situation was drastically different from this conviction of Appellant without instruction on an essential element of the crime. Respondent's reliance on this caselaw is unfounded.

Respondent further contends that manifest injustice did not occur because Appellant was only sentenced to five years for the class B sexual abuse. Under § 558.011, Appellant could have been sentenced to a term not to exceed seven years for a class C felony. However, Appellant was convicted as a persistent offender under § 558.016, and could have been sentenced to a term not to exceed twenty years for the class C felony sexual abuse. Respondent asserts that since Appellant only received five years, there was no manifest injustice. Regardless, the fact remains that Appellant *could* have received a lesser sentence. It was manifest injustice to sentence him on class B sexual abuse when he was only convicted of class C sexual abuse.

It was a manifest injustice to convict Appellant of and sentence him as to class B sexual abuse. Based on the given jury instruction, Appellant could only have been convicted of class C sexual abuse.

The judgments of conviction are affirmed, but judgment on the verdict on Count VII for sexual abuse is remanded. The trial court is instructed to amend the judgment to reflect that Appellant was convicted of class C sexual abuse and to re-sentence Appellant on that count.

All Concur.